**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TERESITA CHING and BROOKE
JOSEPH,

   *Plaintiffs-Appellants*,

   v.

ALEJANDRO MAYORKAS, Director,
U.S. Citizenship & Immigration
Services; ROBIN BARRETT, Field
Office Director, USCIS San
Francisco Office; JANET A.
NAPOLITANO, Secretary, U.S.
Department of Homeland Security;
ERIC H. HOLDER, JR., Attorney
General,

   *Defendants-Appellees*.

No. 11-17041

D.C. No.
4:10-cv-03520-
SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
April 17, 2013—San Francisco, California

Filed August 7, 2013

Before: Mary M. Schroeder, Sidney R. Thomas,
and Barry G. Silverman, Circuit Judges.

Opinion by Judge Thomas

## SUMMARY[*]

### Immigration

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the government in the action brought by Teresita Ching and her husband Brooke Joseph challenging the United States Citizenship and Immigration Service's denial of Joseph's Form I-130 immediate relative visa petition.

The panel concluded that plaintiffs had a protected property interest in the adjudication of Joseph's I-130 petition, and held that their Fifth Amendment procedural due process rights were violated because they were not given the opportunity to cross-examine Ching's first husband regarding his statement that his marriage to Ching was fraudulent. The panel held, however, that statutory protections in removal proceedings do not apply to I-130 visa petitions and that there is no statutory right of cross-examination in I-130 adjudications, and thus found that plaintiffs' rights under the Administrative Procedure Act were not violated.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Sarah B. Castello (argued) and Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for Plaintiffs-Appellants.

Ila C. Deiss (argued), Assistant United States Attorney; Melinda Haag, United States Attorney; and Joann Swanson, Chief, Civil Division, United States Attorneys' Office, San Francisco, California, for Defendants-Appellees.

**OPINION**

THOMAS, Circuit Judge:

Teresita Ching and her husband, Brooke Joseph, claim that their procedural due process rights and their rights under the Administrative Procedure Act ("APA") were violated during the adjudication of Joseph's I-130 visa petition for an immediate relative. Under the circumstances of this case, we conclude that their rights under the APA were not violated, but their procedural due process rights were. We affirm in part and reverse in part.

I

Teresita Ching, a native of China and citizen of the Philippines, lawfully entered the United States on November 5, 2004 as a nonimmigrant visitor. Ching claims that she came to the United States intending to stay for one month, but then began dating Elden Fong, a U.S. citizen, whom she met on a dating website. Ching and Fong married on January 7, 2005, and Fong filed an I-130 visa petition on her behalf.

Eventually, Ms. Ching withdrew the I-485 application for permanent residence and informed USCIS that she no longer wished to proceed as a beneficiary of Fong's petition because she planned to divorce Fong, and USCIS denied the petition for abandonment. A year later, on December 27, 2007, Fong and Ching divorced.

On January 27, 2008, Ching married her current husband, Brooke Joseph, also a U.S. citizen, and Joseph filed an I-130 petition on Ching's behalf. After their interview at a USCIS office, USCIS issued a Notice of Intent to Deny, which provided in relevant part:

> USCIS officers conducted a site visit at Mr. Fong's place of residence, and he was interviewed in regards to his marriage to [Ching]. During that interview, Mr. Fong confessed and provided a sworn statement admitting the following: "My name is Elden Fong and Teresita Ching were married in Oakland on January 7, 2005 in Oakland, CA. Teresita and I never had sex. Teresita and I never lived together. $32,000 was offered and $14,000 was paid in cash /installments. Teresita and I did not marry for love. I regret in full marrying Teresita."

The six sentences quoted above compose the entirety of Fong's statement. Ching was not informed of the circumstances under which Fong was visited or his statement was taken.

Joseph and Ching responded to Fong's very terse statement in the notice of intent to deny with a three-page,

single-spaced, 21-paragraph sworn declaration from Ching describing in excruciating detail her intimate relationship with Fong. Refuting Fong's assertion that the couple never consummated the marriage, Ching stated that they had sex for the first time on their wedding night. She then proceeded to describe in vivid detail how the two would sleep in on weekends, have sex, and share intimate conversations. She described his underwear and recounted some of their pillow talk. She also went on to explain why the marriage deteriorated and eventually ended in divorce. In addition, to corroborate her claim of a bona fide marriage, she furnished photographs of the couple, joint utility bills, an apartment lease, and a letter Fong had previously written to USCIS stating that he and Ching "truly loved each other."

On November 5, 2009, USCIS denied Joseph's I-130, stating that "the beneficiary's first marriage was not entered into [in] good faith, but was a sham, entered into for the sole purpose of evading immigration laws." Though it reviewed the evidence Joseph had submitted, USCIS found the evidence submitted by Joseph to be "self serving."

Joseph appealed to the BIA, which "agree[d] that the record supports a finding that the beneficiary's prior marriage was entered into for the purpose of evading the immigration laws." The BIA explained that "we have considered the arguments and evidence presented by the petitioner both in response to the notice of intent to deny and on appeal, and we must agree that these do not overcome the detailed affidavit of the beneficiary's prior spouse, which was given against his own interest."

On August 11, 2010, Joseph and Ching filed their complaint in district court, claiming that USCIS acted

arbitrarily and capriciously in violation of the APA and the Due Process Clause of the U.S. Constitution by denying Joseph's I-130 petition without affording them the opportunity to cross-examine Fong regarding his statement. Both parties filed motions for summary judgment, and the district court granted the Government's motion for summary judgment and denied the Plaintiffs' cross-motion.

The district court held that there is no statutory right to an adjudicatory hearing, that the opportunity to respond in writing to Fong's statement was sufficient for due process, and that there was no protected liberty or property interest in the adjudication of Joseph's I-130 petition. Finally, the district court held that "[e]ven if Plaintiffs had demonstrated that they have a protected property or liberty in an I-130 visa petition–which they have not–they have failed to show prejudice."

II

The district court correctly held that there is no statutory right of cross-examination in I-130 visa adjudications. Joseph and Ching claim that U.S. Citizenship and Immigration Services ("USCIS") acted arbitrarily and capriciously and violated Section 240(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a(b), in denying Joseph's I-130 petition without affording Joseph and Ching an opportunity to cross-examine Fong regarding his sworn statement. Joseph and Ching rely on INA § 240(b), which provides that during removal proceedings, "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government . . . ." 8 U.S.C. § 1229a(b)(4)(B). They argue

that once a beneficiary of a visa petition is in removal proceedings, the I-130 petitioner is statutorily entitled to the same due process rights as an alien in removal proceedings, and that it is arbitrary and capricious to deny those protections.

However, visa petitions are distinct from removal proceedings. *See Elbez v. I.N.S.*, 767 F.2d 1313, 1314 (9th Cir. 1985) ("Any determination regarding INS conduct during a visa petition proceeding is collateral to a deportation order . . . ."). The statutory protections provided in removal proceedings do not apply to adjudications of I-130 visa petitions.

To the extent that the Plaintiffs claim that USCIS violated INA § 240(b), which applies only to removal proceedings, the district court lacked jurisdiction to consider that claim because a petition for review with the court of appeals is the "sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5). Furthermore, because Ching's removal proceedings are currently pending, there is no agency action for this Court to review.

The district court properly granted summary judgment on this claim.

### III

Plaintiffs also argue that the denial of Joseph's I-130 visa petition violated their Fifth Amendment Due Process rights because they were not afforded the opportunity to cross examine Ching's first husband, Elden Fong, or the USCIS officer who took Fong's statement. We agree.

A

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).  Plaintiffs contend that their interest in the I-130 visa petition is such an interest because the approval of the petition is nondiscretionary.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Supreme Court "cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  Instead, "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges*, 24 F.3d at 62 (internal quotation marks omitted).

Where a petitioner of an immediate relative petition proves that his marriage meets the requirements for the approval of an I-130, he is entitled, as a matter of right, to the approval of his petition.  Section 204(b) of the INA provides that "After an investigation of the facts in each case, . . . the

[Secretary of Homeland Security ("Secretary")[1]] *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative[,] . . . *approve the petition* . . . ." 8 U.S.C. § 1154(b) (emphases added). The decision of whether to approve an I-130 visa petition is a nondiscretionary one because "determinations that 'require application of law to factual determinations' are nondiscretionary." *Hernandez v. Ashcroft*, 345 F.3d 824, 833-34 (9th Cir. 2003) (internal alteration omitted); *see also Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525–26 n.16 (9th Cir. 2012) (en banc) (contrasting INA § 204(b)'s language with discretionary authority elsewhere in the INA); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (explaining that INA § 204(b)'s instruction that the Attorney General "shall . . . approve the petition" suggests that the provision is nondiscretionary).

*Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008), buttresses this conclusion. There, a U.S. citizen wife challenged a consular official's denial of a visa petition for her husband, and the Court determined that "the denial of a visa implicates the constitutional rights of American citizens" because Bustamante "has a protected liberty interest in her marriage that gives rise to a right to constitutionally adequate procedures in the adjudication of her husband's visa application." 531 F.3d at 1061, 1062.

---

[1] The INA initially granted this authority to the Attorney General, but with the 2003 creation of the Department of Homeland Security ("DHS"), this responsibility now belongs to the Secretary of DHS. *See* 6 U.S.C. § 271(b)(1) (delegating authority to the Secretary).

The government contends that when an exception to eligibility exists, the right to obtain the I-130 visa no longer exists, and the process is no longer nondiscretionary. This argument confuses the question of whether there is a protected interest in a benefit with the question of eligibility for that benefit. Virtually no government benefit is available to individuals without a requirement that certain conditions are met. The Supreme Court explained that "the welfare recipients in *Goldberg v. Kelly* [397 U.S. 254 (1970)] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so." *Roth*, 408 U.S. at 577.

The government also contends that the permit denial means that there was no eligibility in the first instance and, therefore, no due process right attached to the procedure. However, "'[a] first principle of Anglo-American jurisprudence, . . . basic to the conception of due process in the procedural sense' is 'that the ends do not justify the means.'" *Pillsbury Co. v. F.T.C.*, 354 F.2d 952, 964 (5th Cir. 1966) (quoting Douglas, *We The Judges*, 354 (Doubleday 1956)). It is process that the procedural due process right protects, not the outcome.

In sum, grant of an I-130 petition for immediate relative status is a nondiscretionary decision. Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility. This protected interest is entitled to the protections of due

process. The district court erred in holding that there was no protected interest.

## B

The district court alternatively determined that, even if there were a protected liberty or property interest, the claims failed because the Plaintiffs failed to show prejudice. The question of whether a plaintiff must demonstrate prejudice in the context of an I-130 visa petition is not settled. The government asserts that a prejudice showing is required, citing *Padilla v. Ashcroft*, 334 F.3d 921, 924–25 (9th Cir. 2003). But *Padilla* and its progeny involve deportation or removal proceedings, and the government has been unable to cite a case in support of its position in the visa context. As we discussed earlier in rejecting Ching's APA claim, visa and removal proceedings, and the rights that attach to each, are different. However, we need not resolve that question, because the Plaintiffs demonstrated sufficient prejudice. Fong's signed statement was accepted as true without affording the Plaintiffs the opportunity for cross-examination, and in the face of contradictory documents and affidavits. As the Supreme Court has explained, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Kelly*, 397 U.S. at 269. An opportunity to confront and cross examine "'is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.'" *Id.* at 270 (quoting *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959)).

The prejudice "standard does not demand absolute certainty; rather prejudice is shown if the violation *potentially* affects the outcome of the proceedings. We may infer prejudice even absent any allegations as to what the petitioner or his witnesses might have said . . . ." *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1077 (9th Cir. 2005) (internal quotation marks, citation, and alteration omitted). Therefore, the Plaintiffs' "showing is sufficient to establish prejudice." *Amponsah v. Holder*, 709 F.3d 1318, 1327 (9th Cir. 2013).

C

Having concluded that plaintiffs had a protected property interest and had established sufficient prejudice, we must then determine whether additional process was due. In doing so, we recognize that "'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, 'place and circumstances.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). As the Supreme Court has instructed, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Because of its inherent differences from the judicial process, administrative proceedings in particular must be carefully assessed to determine what process is due given the specific circumstances involved. And we must do so on a case by case basis.

The proper analysis to determine whether additional process was due in this case is provided in *Mathews*. There, the Supreme Court identified the factors to be considered in determining whether additional due process is required:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

1

The first *Mathews* factor is an assessment of the private interest that will be affected by the official action. Here, Plaintiffs explain that "[w]ithout an I-130 approval, Ms. Ching faces imminent removal from the United States, thus undoubtedly causing immense hardship to herself and her husband." The right to marry and to enjoy marriage are unquestionably liberty interests protected by the Due Process Clause. *See, e.g.*, *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (holding that protected liberty interests include "the right of the individual . . . to marry, establish a home and bring up children"). The right to live with and not be separated from one's immediate family is "a right that ranks high among the interests of the individual" and that cannot be taken away without procedural due process. *Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982). Therefore, the first *Mathews* factor favors Joseph and Ching.

2

The second *Mathews* factor we consider is the risk of an erroneous deprivation of such interest through the procedures used and the probative value of additional procedural safeguards. In this case, the risk of an erroneous finding that a prior marriage was fraudulent is high in cases where an ex-spouse is relied upon for evidence that the previous marriage was fraudulent. Here, for example, USCIS officers went to Fong's home and solicited from him his six-sentence statement; the BIA concluded on the basis of this "detailed" statement alone that the prior marriage was fraudulent. An unexpected visit from government officers can be quite intimidating, particularly if the officials point out that having filed a fraudulent I-130 petition could result in a $250,000 fine and imprisonment for up to five years. *See* 8 U.S.C. § 1325(c). The BIA even noted that Fong made his statement "against his own interest," though that statement is unsupported by the record.

The Supreme Court has explained that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg*, 397 U.S. at 269. An opportunity to confront and cross examine "'is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.'" *Id.* at 269-70 (quoting *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959)). Many ex-spouses could be motivated by "malice, vindictiveness, . . . or jealousy." These nefarious motivations are even more likely if the marriage (and subsequent divorce) were bona fide.

The risk of erroneous deprivation is particularly high in a case such as this, where the visa petitioner has substantial evidence that the first marriage was bona fide. Ching presented extensive details of her marriage to Fong, including descriptions of intimate conversations, and evidence of her life with Fong, including bills and a lease. When there is such compelling evidence to rebut the prior spouse's claim of marriage fraud, there is a high risk of erroneous deprivation when the agency relies exclusively on written evidence.

As to the probative value of additional procedural safeguards, Fong could have elaborated on his fraudulent marriage to Ching and explained under what conditions he wrote the statement that he and Ching "did not marry for love." Plaintiffs also explain they would attempt to find out about any incentives Fong was offered before he signed the statement, and would want to know how long he was interviewed, by whom he was interviewed, and what, if anything, he benefitted from his statement. These questions are far from speculative, and given that the BIA was willing to reject Plaintiffs' evidence on the sole basis of Fong's six-sentence "detailed affidavit," the risk of erroneous deprivation and the likely probative value of additional process are both great. This factor strongly favors Plaintiffs.

3

In assessing the final *Mathews* factor, we consider the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Clearly, the government has a substantial interest in preventing marriage fraud and in avoiding erroneously providing benefits. "Those who engage in [marriage fraud] unfairly cut in front of those

aliens lawfully waiting in line to emigrate here. This kind of marriage fraud undermines the sovereign power of the United States to control who may be allowed resident status." *Azizi v. Thornburgh*, 908 F.2d 1130, 1141 (2d Cir. 1990) (Cardamone, J., dissenting). On the other hand, there is a significant public interest in allowing those who are legitimately married to receive the benefits intended for them.

The additional procedures would entail the minimal cost to the government of holding an additional hearing in this case, and "[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard prior to some administrative decision." *Mathews*, 424 U.S. at 348. Additionally, because the process sought by Plaintiffs is guaranteed to aliens in removal proceedings, there are no practical problems with such a requirement. *See* INA § 240(b), 8 U.S.C. § 1229a(b)(4) ("[T]he alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."). Therefore, we conclude that "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" are relatively slight. *See Mathews*, 424 U.S. at 335.

4

Upon considering all three factors, the extreme weight of the first two factors leads us to conclude that the process by which Joseph's I-130 petition was denied was inadequate. There were two witnesses to the Fong-Ching marriage: Fong and Ching. In this case, it is not possible to determine that Fong's statement is true and that Ching's is false solely by reading them. In addition, Ching presented substantial and–at

this stage–uncontested documentary evidence to corroborate her claim that the marriage was bona fide. Therefore, under the specific circumstances of this case, due process required a hearing with an opportunity for Ching to confront the witnesses against her.

Therefore, we must reverse the district court with instructions to remand the case to the agency for the purpose of holding an evidentiary hearing.

IV

In sum, the district court properly granted summary judgment on the APA claims. It erred in granting summary judgment on the procedural due process claim. We reverse the district court's grant of summary judgment as to the due process claim, and direct it to remand the case to the agency so that the agency may hold an evidentiary hearing.

Costs on appeal shall be awarded to Plaintiffs-Appellants.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**