NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DAVID LEE YOCOM; DUC HUA YOCOM,

Plaintiffs-Appellants,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; et al.,

Defendants-Appellees.

No.   23-55430

D.C. No.
3:22-cv-00839-BEN-BLM

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted April 10, 2024
Pasadena, California

Before:  SILER,** GOULD, and BEA, Circuit Judges.

Plaintiffs-Appellants David Yocom, a United States citizen, and Duc Yocom,

a Vietnamese citizen, appeal the district court order which granted Defendants-

Appellees' ("the government") Federal Rule of Civil Procedure 12(b)(6) motion to

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

dismiss Plaintiffs' procedural due process claim, dismissed sua sponte Plaintiffs' Administrative Procedure Act ("APA") claim, and denied Plaintiffs' request for leave to amend their complaint. Plaintiffs' complaint challenges the Board of Immigration Appeals' ("BIA") dismissal of Plaintiffs' appeal of the United States Citizenship and Immigration Services ("USCIS") Director's decision, which denied David Yocom's Form I-130 visa petition to classify his husband, Duc Yocom, as an immediate relative and thus eligible for lawful permanent resident status. The BIA dismissed David's appeal because it determined that Duc had previously entered into a fraudulent marriage with a woman referred to as T.L., a United States citizen, to evade immigration laws.

After the BIA dismissed Plaintiffs' appeal of the USCIS decision, Plaintiffs brought suit in the U.S. District Court for the Southern District of California. Plaintiffs alleged violations of the Fifth Amendment's Due Process Clause and the APA and requested declaratory and injunctive relief. Plaintiffs argue that the government's evidence of marriage fraud was unreliable because T.L. and Duc signed statements, which admitted the couple had entered into a fraudulent marriage, under duress. Plaintiffs also argue they submitted substantial evidence to the agency that Duc entered into his marriage with T.L. in good faith. This evidence included a declaration by Duc that he married T.L. to hide his homosexuality from his family and to appear "normal" for his family and society. Plaintiffs' primary argument is

2

that under these conditions, they had a procedural due process right to a hearing at which they could cross-examine critical witnesses, namely T.L.

We have jurisdiction to review the district court's order pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.

We review de novo a district court's dismissal of an action pursuant to Rule 12(b)(6). *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). We also review de novo a district court's sua sponte dismissal of a complaint "as if raised in a motion to dismiss." *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002). To determine whether a complaint states a claim to relief that is plausible and non-conclusory, the panel must accept the factual allegations of the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021).

A United States citizen may file an I-130 petition with USCIS to obtain lawful permanent resident status for his noncitizen spouse, the "beneficiary" of the petition. *See* 8 U.S.C. § 1154(a)(1)(A)(i). If USCIS grants an I-130 petition, then the beneficiary is classified as an "immediate relative" who may seek adjustment of status to permanent residence by filing an I-485 application. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1255(a). "[G]rant of an I-130 petition for immediate relative status is a nondiscretionary decision. Immediate relative status for an alien spouse

is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013).

One bar to the grant of an I-130 petition is the so-called "marriage fraud bar," which prohibits the grant of a petition if "the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the [Director of the Bureau of Citizenship and Immigration Services][1] to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). The government has the initial burden of proof to provide "substantial and probative evidence" of marriage fraud. 8 C.F.R. § 204.2(a)(1)(ii); *Zerezghi v. USCIS*, 955 F.3d 802, 805 (9th Cir. 2020). The "substantial-and-probative-evidence standard is a standard of proof, which is at least as high as a preponderance of the evidence." *Zerezghi*, 955 F.3d at 816. "In making its initial determination, the government often uses documents in its possession, interviews with the couple, and observations made during site visits to the couple's marital residence." *Id.* at 805. If the government satisfies its burden, then "it issues a Notice of Intent to Deny the immigration petition. The burden then shifts to the petitioner to rebut that finding." *Id.*

---

[1] This responsibility has been delegated from the Attorney General to the Director of the Bureau of Citizenship and Immigration Services. *See* 6 U.S.C. § 271(b)(1).

To determine whether a marriage was bona fide, the sole inquiry is "whether the parties intended to establish a life together at the time of marriage." *Damon v. Ashcroft*, 360 F.3d 1084, 1089 (9th Cir. 2004). "In determining whether such an intent exists, judges must look to objective evidence and refrain from imposing their own norms and subjective standards on the determination." *Id.* "An intent to obtain something other than or in addition to love and companionship from that life does not make a marriage a sham. Rather, the sham arises from the intent not 'to establish a life together.'" *United States v. Orellana-Blanco*, 294 F.3d 1143, 1151 (9th Cir. 2002) (quoting *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975)).

1. The district court did not err when it granted the government's Rule 12(b)(6) motion to dismiss Plaintiffs' procedural due process claim. Plaintiffs failed to plead a violation of their procedural due process rights because they did not allege facts that made plausible that T.L. would have signed an untrue admission of marriage fraud, on which admission the BIA relied. Because due process "is flexible and calls for such procedural protections as the particular situation demands," the Supreme Court has provided three factors to consider when determining whether additional process was due in a particular case: first, the private interest affected by the official action; second, the risk of an erroneous deprivation and the probable value of additional procedural safeguards; and third, the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (quoting *Morrissey v. Brewer*,

5

408 U.S. 471, 481 (1972)).

Here, the first factor favors Plaintiffs because being separated from one's spouse implicates strong private interests. *See Ching*, 725 F.3d at 1157. The third factor, the government's burden of holding a hearing, would be relatively slight, as we held in *Ching*. *See id.* at 1159.

Turning to the second *Mathews* factor, Plaintiffs' procedural due process allegations do not currently state a plausible claim to relief under our precedent. In *Ching*, USCIS obtained a written statement from the I-130 beneficiary's ex-husband that admitted his previous marriage to the beneficiary had been fraudulent. *Id.* at 1153. The BIA concluded, on the basis of the ex-husband's written statement alone, that the beneficiary's previous marriage was fraudulent. *Id.* at 1158. The plaintiffs, the beneficiary and her present husband, tried to dispute the written statement with a sworn declaration, which described "in vivid detail how the [beneficiary and her ex-husband] would sleep in on weekends, have sex, and share intimate conversations." *Id.* at 1153. The beneficiary also "furnished photographs of the couple, joint utility bills, an apartment lease, and a letter [her ex-husband] had previously written to USCIS stating that he and [the beneficiary] 'truly loved each other.'" *Id.* Considering the *Mathews* factors, "the extreme weight of the first two factors [led us] to conclude that the process by which [the] I-130 petition was denied was inadequate." *Id.* at 1159. We held that, because the government relied on the

6

written statement signed by the beneficiary's ex-husband, procedural due process required the agency to provide plaintiffs the opportunity to confront and cross-examine the ex-husband. *Id.* at 1158–59.

Here, however, Plaintiffs' complaint does not allege facts to support that T.L.'s statement was unreliable on account of coercion or duress, so Plaintiffs have not alleged a risk of an erroneous deprivation or probable value of additional procedural safeguards per the second *Mathews* factor. Though the complaint contains detailed factual allegations explaining why Duc felt coerced to sign the statement after the USCIS officer threatened to expose his homosexuality to T.L., the same cannot be said as to T.L.'s motivation for signing her statement. Further, unlike in *Ching*, where USCIS went to the ex-husband's house after the couple had divorced, Duc was present when T.L. signed the statement at their USCIS interview, so Duc should be able to allege what facts, if any, support that T.L. also felt coerced. These facts could include the volume or tone of the officer's voice, whether T.L. had a physical response to the officer's actions as Duc did, or any other facts to support the plausibility that T.L. would have signed an untrue statement on that day. If the complaint were to include such allegations or other allegations that would show a risk of an erroneous deprivation or probable value of additional procedural safeguards, then Plaintiffs' due process claim would move beyond the motion-to-dismiss stage for a factual record to be developed. As in *Ching*, the parties could

7

move for summary judgment based on a factual record, and the district court could adjudicate the *Mathews* factors in earnest at that stage. *See* 725 F.3d at 1154. Because the complaint does not sufficiently allege facts to make plausible that T.L.'s signed statement was unreliable, the risk of erroneous deprivation was low, as was the probable value of an opportunity to cross-examine T.L. Hence, the district court did not err when it granted the government's Rule 12(b)(6) motion to dismiss Plaintiffs' procedural due process claims.

2. We review a denial of a request to amend a complaint for an abuse of discretion. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 760 (9th Cir. 2017). The district court concluded that amendment of Plaintiffs' complaint would be futile. "When the district court denies leave to amend because of futility of amendment, we will uphold such denial if 'it is clear, upon *de novo* review, that the complaint would not be saved by any amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

Here, the district court abused its discretion when it dismissed Plaintiffs' procedural due process claim without leave to amend their complaint even once. Though we agree with the district court's conclusion regarding the adequacy of Plaintiffs' current complaint, Plaintiffs may be able to allege a plausible claim by adding allegations of coercive behavior directed toward T.L., if any occurred. Thus,

we cannot conclude that Plaintiffs' procedural due process claim could not be saved by amendment of the complaint, so we reverse and remand. *See Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001) ("Because it is not clear that plaintiffs' ADA claim cannot be saved by amendment, we remand this matter to the district court so that plaintiffs may have the opportunity to amend their ADA claim.").

3. Though the government did not move to dismiss Plaintiffs' APA claim, the district court dismissed it sua sponte. First, the district court determined it lacked jurisdiction to hear the APA claim. We have "identified only two circumstances in which a district court may dismiss for lack of subject matter jurisdiction without providing notice and an opportunity to respond": (1) when the parties have previously argued the issue of jurisdiction, or (2) where lack of jurisdiction appears on the face of the complaint and is obviously not curable. *Ho v. Russi*, 45 F.4th 1083, 1086 (9th Cir. 2022).

The parties did not argue the issue of jurisdiction below. And there is no obvious jurisdictional defect in the complaint, especially given the similarities to cases where we have exercised jurisdiction over APA claims related to I-130 proceedings, like *Ching* and *Zerezghi*. The district court determined that it lacked jurisdiction to hear Plaintiffs' APA claim because "there is no statutory right of cross-examination in I-130 visa adjudications." While that is an accurate description of our holding in *Ching*, the lack of cross-examination is not Plaintiffs' argument

under the APA in this case. It is unclear why the district court concluded it lacked jurisdiction to adjudicate Plaintiffs' challenge of a final agency action. Thus, the district court erred when it dismissed Plaintiffs' APA claim for lack of subject matter jurisdiction.

Second, the district court concluded that Plaintiffs failed to state a plausible claim under the APA. "Although [a] trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6), the court must give notice of its intention to dismiss and afford plaintiffs an opportunity to at least submit a written memorandum in opposition to such motion." *Lee*, 250 F.3d at 683 n.7 (internal quotation marks and citations omitted). Failure to provide notice before dismissing a claim sua sponte without leave to amend is a ground for reversal. *See Reed v. Lieurance*, 863 F.3d 1196, 1208 (9th Cir. 2017) ("[T]he district court did not first provide Reed notice and an opportunity to respond before dismissing the . . . claim for failure to satisfy Rule 12(b)(6). Therefore, we reverse the dismissal of this claim."). Further, "[e]ven if a court does first provide proper notice, we will uphold a *sua sponte* [Rule 12(b)(6)] dismissal without leave to amend only where the plaintiff cannot possibly win relief." *Id.* at 1207–08 (internal quotation marks omitted).

The district court's failure to provide notice before dismissing sua sponte Plaintiffs' APA claim is a ground for reversal.

Moreover, we cannot say that Plaintiffs could not possibly win relief on their

APA claim. One theory Plaintiffs raise in their complaint is that the BIA unlawfully shifted the burden of proving Duc's marriage to T.L. was bona fide without first requiring the government to prove by a preponderance of the evidence that the previous marriage was fraudulent, as required under *Zerezghi*. *See* 955 F.3d at 816. In the BIA's order, it stated, "Where there is evidence that a visa petition was previously filed seeking an immigration benefit based on a fraudulent marriage, the burden shifts to the petitioner to establish that the beneficiary did not seek to circumvent the immigration laws based on the prior marriage." The BIA concluded that "the statements given by [Duc] and T.L. at the interview *raised questions* about whether their marriage was fraudulent." The BIA misstated the law because "evidence" and "raising questions" are not the same as "substantial and probative evidence" that would support a determination by a "preponderance of the evidence." Because of this error, Plaintiffs may have stated a plausible APA claim. *See Montes-Lopez v. Holder*, 694 F.3d 1085, 1092 (9th Cir. 2012) ("When this court concludes that an agency has not correctly applied controlling law, it must typically remand, even if we think the error was likely harmless.").

To be sure, this error may have been harmless based on T.L.'s signed admission of marriage fraud, which could satisfy the government's burden of providing "substantial and probative evidence" of marriage fraud. But for the same reasons discussed above, Plaintiffs may be able to amend their complaint to allege

11

facts that would render T.L.'s statement unreliable. If Plaintiffs can do so, then Plaintiffs may be able to plead a plausible APA claim. For these reasons, the district court erred when it dismissed sua sponte Plaintiffs' APA claim without notice and without leave to amend the complaint.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.[2]

---

[2] Each party shall bear its own costs related to this appeal.