**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY LEE WARD,
                 *Plaintiff-Appellant,*

v.

CHARLES L. RYAN, Director,
                 *Defendant-Appellee.*

No. 07-17156

D.C. No.
CV-01-02226-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
January 12, 2010—San Francisco, California

Filed September 27, 2010

Before: Alex Kozinski, Chief Judge, J. Clifford Wallace and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

**COUNSEL**

Beau Sterling, Las Vegas, Nevada, for the plaintiff-appellant.

Michele L. Forney, Phoenix, Arizona, for the defendant-appellee.

---

**OPINION**

CLIFTON, Circuit Judge:

Timothy Lee Ward, an inmate held by the Arizona Department of Corrections ("Department"), appeals from the district court's summary judgment in favor of the Director of the Department.[1] Ward alleges that the Department's withdrawal of $50.00 from his prison wages pursuant to an Arizona statute that requires that amount of money be placed in a dedicated discharge account, to be paid to him upon his release from incarceration, violates the Fifth and Fourteenth Amendments. He seeks immediate access to the funds, because his 197-year sentence makes it unlikely that he will ever be released prior to his death. The district court denied Ward's claim. We affirm.

## I.  Background

Ward was sentenced to 197 years in the custody of the Department as a result of twenty-two felony convictions. As a prisoner who works, Ward is entitled under Arizona law to compensation at a rate to be determined by the Director. Ariz. Rev. Stat. § 31-254(A). For the most part, this compensation is placed in the inmate's spendable account and may be withdrawn for certain enumerated purposes, such as inmate store

---

[1]Charles L. Ryan is substituted for former Director Dora Schriro, who had herself been substituted for former Director Terry L. Stewart.

purchases or long distance telephone calls. Withdrawal of funds requires approval by prison officials.

Pursuant to Section 31-237(A) of the Arizona Revised Statutes, a percentage of the wages earned by a prisoner must be deposited by the Department into a separate account, called a dedicated discharge account, until that account registers a $50.00 balance. The money held in this account is not available for the prisoner to spend while he in prison but will be distributed to him as "gate money" when he is discharged or is transferred to community release or home arrest. *See* Ariz. Rev. Stat. § 31-237(B). If a prisoner dies in prison, the gate money is applied to cremation costs or other related expenses, and any remaining funds are released to his estate or heir.[2] As required by the Arizona statute, $50.00 was withheld from Ward's prison wages and is held by the Department in his dedicated discharge account.

Ward filed pro se a 42 U.S.C. § 1983 civil rights suit against the Director alleging denial of access to the courts in violation of the Sixth Amendment. He amended his complaint to add a claim that the withholding of his wages constituted a violation of the Eighth Amendment and sought both compensatory and punitive damages against the Director, as well as injunctive relief. Ward's complaint was dismissed by the district court for failure to state a claim. Ward appealed the dismissal to this court. We affirmed the dismissal of the access-to-courts claim but reversed the dismissal of the due-process claim, remanding for further proceedings, which will

---

[2]Department Order 711.05, providing for the disposal of a deceased inmate's property, was amended effective April 16, 2009. It supercedes the previous 2007 version of the order, which was cited in the district court's decision below. The current version makes no specific mention of the proposition that dedicated discharge account funds will be applied first to a deceased inmate's cremation costs, suggesting that the funds may simply be released to the prisoner's estate or heir. This amendment has no effect on our decision.

be more fully described below.[3] *See Ward v. Stewart*, 81 F. App'x 229 (9th Cir. 2003) (unpublished).

After the case returned to district court, the Director moved for summary judgment on the due-process claim, asserting that he was entitled to qualified and sovereign immunity. The district court granted partial summary judgment in the Director's favor, holding that the Director was entitled to qualified immunity regarding his personal liability and to sovereign immunity for his official actions. The court also granted summary judgment for the Director on Ward's due-process claim for punitive damages. The court did not at that point grant summary judgment on Ward's claim for injunctive relief, instead ordering supplemental briefing on that issue.

In his supplemental brief Ward for the first time alleged violations of his Fifth and Fourteenth Amendment rights against the government's taking of property without just compensation. Following consideration of Ward's claims, including the new takings claim,[4] the district court denied Ward's request for injunctive relief and dismissed the remainder of his claims.

This appeal followed.[5]

## II.  Discussion

We review the district court's summary judgment de novo. *See Universal Health Servs., Inc. v. Thompson*, 363 F.3d

---

[3]The district court interpreted Ward's Eighth Amendment claim as a due-process claim, and we followed this interpretation.

[4]The district court elected to consider Ward's takings claim because the allegations of a pro se complaint are held to a less stringent standard, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), and because the Director had the opportunity to respond to Ward's takings claim in his supplemental reply brief.

[5]In this appeal Ward has been represented by counsel appearing pro bono.

1013, 1019 (9th Cir. 2004). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Universal Health Servs.*, 363 F.3d at 1019 (internal quotation marks omitted). Where, as here, the underlying facts are not in dispute, we are left to determine whether the district court correctly applied the law. *Id*.

**[1]** Ward's primary argument on appeal is that the withholding of the $50 for gate money constituted a taking of his private property in violation of his constitutional rights. The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without just compensation. This right is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980).

**[2]** To establish a violation of the Takings Clause, Ward must first demonstrate he has a property interest that is constitutionally protected. *Schneider v. Cal. Dep't of Corr.* (*Schneider II*), 151 F.3d 1194, 1198 (9th Cir. 1998). "Only if [the plaintiff] does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." *Id*. Property interests are not constitutionally created; rather, protected property rights are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972).

**[3]** Inmates forfeit many of their traditional rights to property. *See Givens v. Ala. Dep't of Corr.*, 381 F.3d 1064, 1068

(11th Cir. 2004). And inmates did not have a protected property interest in their wages at common law. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682 (1974). The Supreme Court of Arizona has recognized, however, that Arizona created a protected property interest in inmate wages by statute. *See Zuther v. State*, 14 P.3d 295, 302 (Ariz. 2000); Ariz. Rev. Stat. § 31-254(A) ("Each prisoner who is engaged in productive work . . . shall receive for the prisoner's work the compensation that the director determines."). It is thus undisputed that Ward has a protected property interest in his prison wages.

**[4]** Nonetheless, courts have consistently held that such statutes granting inmates a protected property interest in their wages may also limit and define the contours of such interest. *See, e.g.*, *Washlefske v. Winston*, 234 F.3d 179, 185 (4th Cir. 2000) ("[A]n inmate has no property interest in any 'wages' from his work in prison except insofar as the State might elect, through statute, to give him rights."); *Rochon v. La. State Penitentiary Inmate Account*, 880 F.2d 845, 846 (5th Cir. 1989) ("[Petitioner] receives incentive wages solely because of the state statutory scheme. Thus, the nature of his property interest in those funds may be defined by the reasonable provisions of that legislation."); *see also Givens*, 381 F.3d at 1069-70 (holding that the statutory provisions creating a property interest in inmate wages do not create an interest in the interest accrued on their accounts); *Allen v. Cuomo*, 100 F.3d 253, 261-62 (2d Cir. 1996) (holding that the statute providing for payment of inmate wages did not create an entitlement in access to wages prior to release); *Hrbek v. Farrier*, 787 F.2d 414, 416 (8th Cir. 1986) (holding that the statutory scheme allowed for deductions from prison wages and stating that the "statutory provisions clearly establish that [petitioner] can assert no legitimate claim of entitlement to the full amount of his wages based upon state law").

In *Tellis v. Godinez*, 5 F.3d 1314 (9th Cir. 1993), we considered a Nevada inmate's right to interest earned on money

deposited in his personal property fund. In holding that the inmate did have a constitutionally protected property interest, we determined that we needed to look not only at the plain language of the section of the statute providing for the inmate's property interest, but also its context within the surrounding statutory framework. *Id*. at 1316-17 ("[T]he statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context.") (internal quotation marks omitted).

**[5]** In turning to the Arizona statutory framework, we begin by observing that in *Zuther*, the Supreme Court of Arizona rejected a challenge by a different Department inmate to the same gate-money requirement that is at issue in this case. While recognizing that the inmate had a statutorily-created property interest in his wages, the Arizona court held that the inmate had "no constitutional right to possess that property while in prison, and [that] the delay in access to the amount withheld [was] at most a *de minimus* deprivation." *Zuther*, 14 P.3d at 302.

We pointed out in our previous decision in this case, however, that *Zuther* might not be dispositive here because Zuther had actually been released and granted access to the withheld funds, *see id.* at 298 n.2, while Ward is serving a 197-year sentence and therefore will probably never gain personal access to the funds. *Ward*, 81 F. App'x at 229.

On remand, the district court considered the consequences of Ward's particular sentence on the withholding of wages in the dedicated discharge account and concluded that the application of the requirement did not alter the outcome for two reasons. First, even prisoners sentenced to life imprisonment are sometimes able to obtain release prior to expiration of their natural life through reversal of their conviction or sentence on appeal; reprieve, commutation, or pardon; or a reduction of sentence by subsequent law. Second, funds held in a dedicated discharge account for an inmate who dies in

prison are applied to his cremation or other final expenses, and any remaining funds inure to his estate. We agree with the district court's conclusion.

**[6]** Arizona statutes impose several limitations on an inmate's spending of his wages and delineate mandatory deductions from inmates' accounts. These limitations and mandatory deductions indicate the state's intent to place restrictions on an inmate's control over the wages he has earned. Section 31-254 of the Arizona Revised Statutes leaves the amount of compensation for inmate work to the discretion of the Director. Ariz. Rev. Stat. § 31-254(A). The statute provides for mandatory deductions from inmate wages, not only for the dedicated discharge account, but also for court costs, room and board costs, and court ordered dependent care. *Id.* § 31-254(D), (E). The Director is also given explicit authority to regulate inmate usage of the funds in prisoner spendable accounts. *Id.* § 31-230(B) ("The director shall adopt rules for the disbursement of monies from prisoner spendable accounts."). Additionally, the statute creating the dedicated discharge account does not provide for exceptions or adjustments based on the length of an inmate's sentence. *Id.* § 31-237.

**[7]** These statutes clearly establish a framework under which inmates' property interest in their wages is limited by the oversight of the Director and is subject to mandatory deductions. The statutes do not give inmates a full and unfettered right to their property but rather restrict their control over their earnings. Accordingly, Ward does not possess a protected property interest in the immediate access to wages held in his dedicated discharge account, because he does not currently have the statutory right to use these funds in the account. Ward's life sentence does not alter this outcome. While these funds are Ward's property, the Director may properly restrict his access to them without offending traditional notions of property law.

Ward argues that even if a statute does not explicitly create a property interest, such right may nonetheless still exist. That is true. We held in *Schneider II* that courts must consider whether the claimed property interest is "a 'core' notion of constitutionally protected property into which state regulation simply may not intrude without prompting Takings Clause scrutiny." 151 F.3d at 1200. Property's "core" meaning is determined "by reference to traditional 'background principles' of property law." *Id.* at 1201.

In *Schneider II* we examined the California Department of Corrections' failure to pay interest on funds deposited in inmate trust accounts. *Id.* at 1195. We held that "[t]he 'interest follows principal' rule's common law pedigree . . . leaves us with little doubt that interest income of the sort at issue here is fundamental that States may not appropriate it without implicating the Takings Clause." *Id.* In the fourth round of litigation in *Schneider*, we held that California's failure to pay interest was therefore a taking under the Fifth Amendment where the interest was diverted to a common inmate welfare fund. *Schneider v. Cal. Dep't of Corr.* (*Schneider IV*), 345 F.3d 716, 719-21 (9th Cir. 2003).

**[8]** Ward's claim does not concern a "core notion of constitutionally protected property." As we previously explained, under common law prison inmates lost their rights to unfettered control and use of private property. The dedicated discharge account, while not currently accessible by Ward, is being held for Ward's benefit. It will be paid to him upon discharge, used for his final expenses, or left to his heir. It has not and will not be taken and used by the government for its own benefit or for the benefit of anyone else, unlike the interest income in the *Schneider* cases, which was permanently taken by the California Department of Corrections and placed in a common fund to be used for the inmate population as a whole. In light of Ward's limited property right in his wages and the fact he has not suffered a permanent taking of his wages by their placement in a dedicated discharge account,

Ward has not stated a claim for the unconstitutional taking of his property. The dedicated discharge account here thus differs from inmate accounts at issue in other cases where we held that the Takings Clause was implicated. *See, e.g.*, *Schneider IV*, 345 F.3d at 719-21; *McIntyre v. Bayer*, 339 F.3d 1097, 1099-1100 (9th Cir. 2003) (holding that pooling interest on Nevada inmate trust accounts and requiring inmates to contribute a portion of their wages to a victims' compensation fund implicated the Takings Clause).

**[9]** Ward also makes a due process claim, but that is not viable either. To establish a due process violation, an inmate "must demonstrate that [he] ha[s] been deprived of a protected liberty or property interest by arbitrary government action." *McKinney v. Anderson*, 924 F.2d 1500, 1510 (9th Cir. 1991), *vacated on other grounds by Helling v. McKinney*, 502 U.S. 903 (1991). As discussed above, Ward does not have a protected property interest in the current use of the funds in the dedicated discharge account, and he has not been permanently deprived of any property interest. Furthermore, the government's action here is not arbitrary; as the district court pointed out, "[g]ate money promotes public welfare and the common good by aiding inmates' integration into society and removing the immediate temptation to acquire needed funds through illegal means."

## III. Conclusion

**[10]** Ward does not have a current possessory property interest in the wages withheld in the dedicated discharge account and he has not been permanently deprived of those funds, so the Department's withholding of the $50.00 from his wages for gate money does not violate his constitutional rights. The district court properly granted summary judgment for the Director. Because of our resolution of that issue, we do not need to address the separate arguments regarding qualified immunity and punitive damages.

**AFFIRMED.**