**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VICENTE PALACIOS CRAWFORD, individually and on behalf of all others similarly situated, *Plaintiff-Appellant*, <br><br> v. <br><br> ANTONIO B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM; EDDIE BAZA CALVO; RICARDO C. DUENAS, GIAA Board Chairman; ANTHONY ADA, In His Official Capacity as Chairperson of the Guam Ancestral Lands Commission, *Defendants-Appellees*. | No. 17-16942 <br><br> D.C. No. 1:15-cv-00001 <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted November 13, 2018
San Francisco, California

Filed March 1, 2019

Before:  Sidney R. Thomas, Chief Judge, Susan P. Graber, Circuit Judge, and Leslie E. Kobayashi,[*] District Judge.

Opinion by Judge Kobayashi

**SUMMARY[**]**

**Civil Rights**

The panel dismissed the appeal in part and affirmed in part the district court's summary judgment in an action brought by plaintiff, individually and on behalf of others similarly situated, pursuant to 42 U.S.C. § 1983 and Guam law, alleging procedural due process and equal protection violations in connection with plaintiff's attempts to be compensated for ancestral land taken by the government of Guam for the operation of A.B. Won Pat International Airport.

The United States government took control of substantial amounts of privately owned land on Guam for military purposes around the time of World War II.  Plaintiff's ancestral land is in a region where many of the taken properties were subsequently transferred by the United States to the government of Guam, including land where the international airport is now located.  In 1999, the Guam

[*] The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawai`i, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

legislature passed the Guam Ancestral Lands Act, which added Chapter 80 to the Guam Code Annotated and established an administrative process for exercising ancestral property rights. However, no claims by ancestral landowners whose land is currently being used for public purposes have been considered and resolved through compensation.

The panel held that because the International Airport Authority was not named in either the appealed due process or equal protection violation counts, it was not a proper party to the appeal and therefore needed to be dismissed. The panel further held that it would consider the merits of plaintiff's equal protection claims only against the Guam government defendants.

The panel held that while the Guam legislature had clearly established a process to receive, evaluate, and compensate ancestral property right claims, the legislature did not design the process to be sufficiently definite to transform plaintiff's expectation into a property right entitled to due process protection. The panel therefore held that provisions of Chapter 80 and the Guam Public Laws, whether examined individually or read together, did not give rise to a protected property interest under the Due Process Clause.

Plaintiff also alleged Fourteenth Amendment equal protection rights violations because, unlike the ancestral landowners who had received full compensation by the return of lands that were no longer being used by the government, plaintiff's land has not been returned and he had not been compensated. The panel held that the statutory differences in treatment between a landowner whose lands were no longer in use and one whose lands continued to be used was not irrational, and served an important purpose—to resolve

efficiently the ancestral land claims of the landowners whose lands were no longer in use. The panel therefore concluded that the classifications established in the statutory scheme survived rational basis review and the panel affirmed the district court's summary judgment on the equal protection claim.

**COUNSEL**

Scott M. Grzenczyk (argued), Jordan Elias, and Daniel C. Girard, Girard Gibbs LLP, San Francisco, California; Ignacio Cruz Aguigui, The Law Offices of Ignacio Cruz Aguigui, Tamuning, Guam; for Plaintiff-Appellant.

Genevieve Rapadas (argued), Jay D. Trickett, and Kathleen V. Fisher, Calvo Fisher & Jacob LLP, Hagåtña, Guam, for Defendants-Appellees Antonio B. Won Pat International Airport Authority, Guam, and Ricardo C. Duenas.

David J. Highsmith (argued), Assistant Attorney General; Elizabeth Barrett-Anderson, Attorney General; Office of the Attorney General, Tamuning, Guam; for Defendants-Appellees Eddie Baza Calvo and Anthony Ada.

**OPINION**

KOBAYASHI, District Judge:

Around the time of World War II, the United States government took, for little or no compensation, numerous tracts of real property from private Guamanian landowners for military use. Plaintiff Vicente Palacios Crawford is the son of two such landowners. Plaintiff's ancestral land is in the Tiyan region, where many of the taken properties were subsequently transferred by the United States to the government of Guam. Defendant Antonio B. Won Pat International Airport Authority, Guam ("GIAA") currently operates the A.B. Won Pat International Airport, which is located on ancestral lands in the Tiyan region, including Plaintiff's. In its several attempts to address this past injustice, the government of Guam established administrative entities and procedures to receive and resolve ancestral landowners' claims for the taking of their lands without adequate compensation. These efforts have a convoluted history of enactment and partial repeal, as well as a lack of funding. As a result, no claims by ancestral landowners whose land is currently being used for public purposes have been considered and resolved through compensation. Plaintiff filed this action against the GIAA Defendants—the GIAA and GIAA chairperson Ricardo C. Duenas[1]—and the

---

[1] Duenas was sued in his official capacity as chairperson of the GIAA's board of directors. During the district court proceedings, Duenas became the chairperson of the GIAA's board of directors and replaced Edward G. Untalan as a defendant. The parties later stipulated to dismiss Count II against Duenas.

Government Defendants—Governor Edward Calvo[2] and Guam Ancestral Lands Commission ("GALC") chairperson Anthony Ada[3]—and asserts that lengthy delays in the compensation process violate his constitutional rights to procedural due process and equal protection. Plaintiff appeals the district court's grant of summary judgment in favor of the defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

### A.  Historical Background

The United States government took control of substantial amounts of privately owned land on Guam for military purposes during and immediately after World War II. At the time, many of the landowners received little or no compensation. After World War II ended, Congress transferred land no longer necessary for American military use to the naval government of Guam. Later, the Organic Act of Guam, Pub. L. No. 630, 64 Stat. 384 (1950), created the government of Guam, transferred certain land from the naval government of Guam to the new government of Guam, and placed other land under the control of the government of Guam for the benefit of the people of Guam.

---

[2] Governor Calvo has been sued in this case in his official capacity as the Governor of Guam.

[3] Defendant Anthony Ada was substituted for Defendant Anita Orlino, GALC's prior chairperson, pursuant to Federal Rule of Civil Procedure 25.

In a condemnation proceeding brought by the naval government of Guam in 1950, Plaintiff's mother, Josefina Palacios Crawford (formerly Josefina Palacios Flores), received $8,340.00 as compensation for the taking of her property, Lot 5204 in the Tiyan region. On January 25, 1980, Josefina Crawford, individually and as Jesus C. Flores's heir, filed a complaint against the United States, seeking further compensation, pursuant to 48 U.S.C. § 1424c ("*J. Crawford v. United States*").[4] Josefina Crawford, and other similarly situated claimants, agreed to a stipulated judgment with the United States in a consolidated case in 1992. All of the consolidated claims were extinguished by agreement. Thus, in 1993, Josefina Crawford was awarded $71,227.22 for the taking of Lot 5204.

In 1994, Congress enacted the Guam Excess Lands Act, Pub. L. No. 103-339, 108 Stat. 3116 (1994), authorizing the transfer of land in Guam from the United States to the government of Guam, with the requirement that the government of Guam develop a plan to use the land for public benefit. The Guam legislature, the *I Liheslaturan Guåhan*, has repeatedly expressed its intent to restore the excess lands to the original owners or their heirs. *See, e.g.*, Guam Pub.

---

[4] In 1977, Congress passed an amendment to the Guam Organic Act, authorizing the United States District Court for the District of Guam to hear claims by former Guam landowners, or their heirs or legatees, whose land was "acquired other than through judicial condemnation proceedings, in which the issue of compensation was adjudicated in a contested trial in the District Court of Guam, by the United States between July 21, 1944, and August 23, 1963." 48 U.S.C. § 1424c(a). The district court was authorized "to award fair compensation in those cases where it is determined that less than fair market value was paid as a result of (1) duress, unfair influence, or other unconscionable actions, or (2) unfair, unjust, and inequitable actions of the United States." *Id.*

L. 23-141, § 3 (1997). In 1999, the Guam legislature passed the Guam Ancestral Lands Act ("GALA"), Guam Pub. L. 25-45, § 1 (1999), which recognized that the powers granted to Guam's agencies by previous legislation had proven inadequate to implement remedies for the ancestral landowners, *id.* § 2(a). Significantly, the GALA added Chapter 80 to Title 21 of the Guam Code Annotated (21 Guam Code Ann. §§ 80101 to 80104),[5] which

> affirms and formally recognizes the "Ancestral Property Right"; establishes an administrative process for the exercise of that right; and creates the Guam Ancestral Lands Commission ["the Commission" or "GALC"] and authorizes the Commission to administer the provisions of this Chapter in order that original landowners, their heirs and their descendants may expeditiously exercise all their fundamental civil rights in the property they own. The exercise of "ancestral property right" claims shall be applicable to lands already declared excess by the Federal government and shall also be applicable to all future declaration of excess lands either by the United States Government or by the government of Guam.

21 Guam Code Ann. § 80102(c). In order to provide a remedy for ancestral landowners, the Guam legislature ordered GALC to establish a "Land Bank Trust" to manage

---

[5] Title 21 Guam Code Annotated §§ 80105 and 80106 were added in subsequent years. Guam Pub. L. 27-113 (2004); Guam Pub. L. 28-133 (2006).

and, if necessary, develop the land returned from the United States and to use any income generated by the land to compensate the ancestral landowners. *Id.* § 80104(e) ("The Commission shall establish rules and regulations pursuant to the Administration Adjudication Law for the Guam-based trust. The resulting income shall be used to provide just compensation for those dispossessed ancestral landowners."). However, no payments have been made from the Land Bank Trust to ancestral landowners because of a bureaucratic impasse: the rules and regulations for the Land Bank Trust have not been finalized, and no claims can be paid until the rules and regulations are finalized.

In 2000, the United States transferred to the GIAA, by quitclaim deed, the land in the Tiyan region on which the international airport now sits. This deed requires that the transferred property "be used for public airport purposes for the use and benefit of the public on reasonable terms and without unjust discrimination." It also provides that the airport property cannot be sold or otherwise used without the Federal Aviation Administration's consent and that all revenues generated by the airport can be used only for the airport's capital or operating costs. If the GIAA fails to comply with these restrictions, the United States can retake possession of the transferred land. In short, the quitclaim deed prevents the return of the airport property, or the payment of compensation from revenue generated by the land, to ancestral landowners, including Plaintiff.

The Guam legislature has attempted repeatedly to create a compensation process for those ancestral landowners whose

land is used for the airport.[6]  *See, e.g.*, Guam Pub. L. 24-214 (1998) (establishing the Tiyan Trust); Guam Pub. L. 26-100, § 5 (2002) (repealing Pub. L. 24-214).  Among these attempts is Public Law 26-100, which established a GIAA Task Force ("the Task Force") to identify properties under GIAA control that are required for "strictly airport-related operations." Guam Pub. L. 26-100, § 4 (2002).  The Task Force was charged with identifying lands "excess to the needs of GIAA," as well as non-Tiyan properties that could be conveyed as compensation to ancestral landowners whose Tiyan lands could not be returned.  *Id.*  The current version of § 4 requires the Task Force to identify the ancestral landowners who had properties taken for use by the airport and to identify land owned by the government of Guam that can be used to compensate those ancestral landowners by way of a land exchange.  Guam Pub. L. 30-6, § 1 (2009).

The Task Force ultimately proposed a land exchange of two parcels of property in the Land Bank Trust for the release of claims by ancestral landowners whose land had been taken and used for the airport.  *See* Guam Pub. L. 30-158 (2010) (effectuating the exchange); *see also id.*, Exh. A (P/L 30-6 Tiyan Task Force Report).  Because the proposed land exchange excluded the ancestral landowners whose lands were not used for the airport, these excluded ancestral landowners filed a class action in the Guam Superior Court to enjoin the land exchange, *Gange, et al. v. Gov't of Guam, et al.*, Civil Case No. 1461-10.  The superior court in 2013 found that the proposed land exchange would constitute a taking of property without compensation and granted a permanent injunction.  In response, Governor Calvo

---

[6] Guam has restored lands to Tiyan ancestral landowners whose lands were not necessary for the airport's operation.

announced in 2014 that GALC would disburse $3.2 million to the ancestral landowners throughout Guam.  None of these funds have yet been paid to any ancestral landowners.

## B.  Plaintiff's Ancestral Property Right Claim

The Government Defendants concede that Plaintiff has rights under the GALA as an ancestral landowner because of his mother's ownership of Lot 5204, and that he is not likely to regain possession or title because his land is still being used for the airport.

On August 16, 2002, Plaintiff submitted to GALC an Ancestral Title and Compensation Application regarding Lot 5204.  More than 130 ancestral landowners filed claims regarding lands being used by the GIAA for the airport ("Airport Ancestral Lands Claims").  GALC has not held any hearings regarding the Airport Ancestral Lands Claims, and the government of Guam has not compensated any of these ancestral landowners.  Thus, Plaintiff's ancestral land claim remains unresolved.

## C.  District Court Proceedings

Plaintiff filed his Class Action Complaint on January 16, 2015.  Relevant to the instant appeal, the Complaint alleged the following claims: a 42 U.S.C. § 1983 claim against the Government Defendants and Duenas alleging a denial of procedural due process ("Count I"); and a § 1983 claim against the Government Defendants and Duenas alleging a denial of equal protection ("Count II").

On September 1, 2016, Plaintiff and the GIAA Defendants filed motions for summary judgment.  The

Government Defendants filed a counter-motion for summary judgment. The Court denied Plaintiff's motion, granted the GIAA Defendants' motion, and granted in part the Government Defendants' motion. Judgment as a matter of law was granted to the Government Defendants and Duenas as to Count I, and summary judgment was granted to the Government Defendants as to Count II.[7] This timely appeal followed.

## II.  STANDARDS OF REVIEW

We review *de novo* a district court's ruling on the parties' cross-motions for summary judgment. *EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 921 (9th Cir. 2018). "Viewing the evidence in the light most favorable to the nonmoving party, we must decide whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 903 F.3d 829, 845 (9th Cir. 2018) (internal quotation marks and brackets omitted). The district court's grant of summary of judgment may be affirmed on any ground that is supported by the record, even if the district court did not rely on that ground. *Id.*

---

[7] Plaintiff's other two claims were brought under Guam law. Having disposed of the two § 1983 claims, the district court declined to exercise supplemental jurisdiction over the claims brought under Guam law and dismissed them without prejudice. Plaintiff does not contest that ruling in this appeal.

## III.   DISCUSSION

### A.  Whether the GIAA Defendants Are Proper Parties

The only claims at issue in this appeal are Counts I and II. Because the GIAA was not named in either count, it is not a proper party to this appeal and therefore must be dismissed. Additionally, Duenas is no longer named in Count II.  Thus, Count I is the only claim against Duenas before us.

The crux of Count II is that the procedures established in § 80104 to process ancestral property right claims are inadequate and thus deprive Plaintiff of his Fourteenth Amendment right to procedural due process.  The district court granted summary judgment on Count II in favor of Duenas.

At summary judgment, Plaintiff conceded that: (1) no GIAA official has ever served as a GALC commissioner; (2) neither the GIAA nor any GIAA official participates in promulgating or administrating GALC's procedures; (3) the GIAA was not served with Plaintiff's application asserting his ancestral property right claim; (4) the GIAA did not participate in GALC's review of Plaintiff's application; and (5) the GIAA did not oppose Plaintiff's application. Although Plaintiff's admissions refer only to the GIAA, no evidence in the record exists to suggest that Duenas (or his predecessor Untalan) either deprived Plaintiff of a constitutionally protected property interest or denied Plaintiff adequate procedural protections.[8]  *See Roybal v. Toppenish*

---

[8] A Guam official is a "person" for purposes of § 1983 when the official is sued, in his official capacity, for prospective relief.  *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1235 (9th Cir. 2015).  Further, the

*Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." (internal quotation marks omitted)).   The district court's grant of summary judgment in favor of Duenas is therefore affirmed, although on different grounds.   *See Glazing Health & Welfare*, 903 F.3d at 845.   Therefore, we need only address the merits of Plaintiff's claims against the Government Defendants.

## B.  Whether Plaintiff's Ancestral Property Right is a Constitutionally Protected Property Right

Plaintiff challenges the district court's ruling that the Government Defendants were entitled to summary judgment on Plaintiff's procedural due process claim because Plaintiff had not established, and could not establish, a constitutionally protected property right.   Due to the conditions placed on the transfer of land to the GIAA, Plaintiff's property cannot be returned.   Additionally, Plaintiff's claim against the United States was settled when his mother received compensation in 1993.   Therefore, the only property right at issue is Plaintiff's right to payment from Guam under Chapter 80 for his ancestral claim to Lot 5204.

Constitutionally protected property interests are not limited to tangible property.   *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2016).   A constitutionally protected property interest must be "created and [its] dimensions . . . defined by existing rules or understandings

---

Fourteenth Amendment applies to Guam, pursuant to 48 U.S.C. § 1421b(u).

that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). In other words, only "a legitimate claim of entitlement"—as opposed to "an abstract need or desire for the particular benefit"—will support a constitutionally protected property interest. *Roybal*, 871 F.3d at 931 (citing *Roth*, 408 U.S. at 577).

## 1.  Lack of Implementing Regulations

In the public benefits context, we have held that a protected property right exists when "a statute authorizes those benefits and the implementing regulations greatly restrict the discretion of the people who administer those benefits." *Nozzi*, 806 F.3d at 1191 (internal quotation marks omitted).   Whether the plaintiff has "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (alteration in *Ching*) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994)).[9] If government officials have the discretion to grant or deny a benefit, that benefit is not a protected property interest. *Id.* (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

---

[9] Although *Ching* addressed the Due Process Clause of the Fifth Amendment, the caselaw regarding constitutionally protected property interests for purposes of the Fourteenth Amendment still applied. *See* 725 F.3d at 1155.

Here, there are no regulations implementing Chapter 80. In 2015, GALC *proposed* 21 Guam Admin. R. & Regs. § 80103.30(a) (Definitions), (b) (Compensation Methodology), and (c) (Method of Distribution) (collectively "Land Bank Trust Rules"). However, the Office of the Attorney General of Guam ("Guam Attorney General") *denied approval* of the proposed Land Bank Trust Rules for several reasons, including (1) GALC did not submit an economic impact statement with the proposed Land Bank Trust Rules and (2) the compensation provisions of the proposed rules contradicted the relevant provisions of § 80104. Thus, no rules or regulations exist to implement and govern the Land Bank Trust. This lack of implementing regulations supports the district court's conclusion that Plaintiff's ancestral property right is not a constitutionally protected interest for purposes of the Due Process Clause. *See Nozzi*, 806 F.3d at 1191 (stating that both the statutes and their implementing regulations must be considered in determining whether the right is sufficiently defined to warrant constitutional protection).

### 2. Section 80104 and Other Chapter 80 Provisions

Plaintiff contends that, even in the absence of implementing regulations, § 80104 and the relevant Guam Public Laws contain sufficiently mandatory terms to create a reasonable expectation of entitlement to payment. We disagree.

Neither the text of § 80104 nor the text of Chapter 80 in general creates an entitlement couched in mandatory terms. First, inconsistency in the provisions regarding "just compensation" precludes the recognition of an entitlement.

The definition of "just compensation" in § 80104(b)(1)—which applies to all of Chapter 80—refers to, but is inconsistent with, the § 80101 definition.  Under § 80104(b)(1), just compensation is "defined as limited to the return of land or access to landlocked lots across public lands."  By contrast, § 80101(k) defines just compensation as "only land recovery or land exchange, and . . . any other form of compensation other than a specifically described available land."

Further confusion regarding "just compensation" arises from § 80104(c), which sets forth the "Four (4) Step Process for Extinguishment of Claims, Award of Just Compensation, and Recordation of Ancestral Land Title" that GALC is required to include within its procedures, rules, and regulations.  It provides:  "This Chapter sets forth two (2) forms of compensation for future title claims which shall be either the return of original ancestral land, or just compensation, as defined in § 80101 of this Act, based upon mutually satisfactory negotiations between the government and the applicant."  § 80104(c), Step 2, Category 2.  Section 80104(c) thus suggests that "the return of original ancestral land" is not considered "just compensation," which is inconsistent with both § 80101(k) and § 80104(b)(1). Category 2 also appears to require that a just compensation award result from "mutually satisfactory negotiations," a term entirely absent from both § 80101(k) and § 80104(b)(1). Simply put, Chapter 80 is internally inconsistent as to what just compensation entails; these inconsistencies weigh against a ruling that Plaintiff is entitled to the protection afforded by the Due Process Clause.

Second, although § 80104 contains mandatory text[10] indicating the Guam legislature's intent to extinguish ancestral property right claims and provide payment of just compensation awards, there is no mandatory wording that compels GALC to pay just compensation for ancestral property right claims. At the first step of the process, GALC must accept an ancestral claim application, enter it into the Claims Registry, and "make a determination if in fact a valid basis for an ancestral title claim exists." § 80104(c), Step 1. This requirement that GALC make a validity determination does not create a constitutionally protected property right, because the statute does not sufficiently define what constitutes a "valid basis."

In *Ching*, we held that a citizen petitioner's right to immediate relative status for his or her alien spouse is entitled to due process protections, reasoning that "[t]he decision of whether to approve [the] petition is a nondiscretionary one because determinations that require application of law to factual determinations are nondiscretionary." 725 F.3d at 1155 (internal quotation marks omitted). There, because of the statute's mandatory text,[11] the citizen petitioner was

---

[10] The four-step process requires GALC to: establish and maintain five informational registries; accept ancestral property claim applications that meet certain requirements; issue a certification when an award of just compensation is made; and determine how to effectuate an award of just compensation and extinguish an ancestral property right claim. § 80104(c), Step 2–Step 4.

[11] "Section 204(b) of the [Immigration and Nationality Act] provides that 'After an investigation of the facts in each case, . . . the [Secretary of Homeland Security ("Secretary")] *shall*, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative[,] . . . *approve the petition*. . . .'"

"entitled, as a matter of right, to the approval of his petition" if he "prove[d] that his marriage [met]" the statutory requirements. *Id.* That statute left no room for discretionary enforcement, and thus it gave the petitioner a constitutionally protected property interest.

By contrast, § 80104(c), Step 1 does not identify the specific criteria required to establish that an ancestral title claim has a "valid basis." Section § 80101's definitions of "Ancestral Lands," "Ancestral Lands Title," and "Ancestral Property Right" likewise are silent as to what a claimant must do to establish a valid ancestral title claim. In fact, § 80104(c), Step 1 states that unspecified "other details about the claim" may exist, which GALC "may deem appropriate" to consider in determining whether the claim is valid. Thus, § 80104(c), Step 1—unlike 8 U.S.C. § 1154(b)—fails to provide a statutory scheme identifying certain facts that would *compel* GALC to find that the ancestral claim is valid.

Additionally, none of the other steps in the § 80104(c) process require GALC to award just compensation if certain specified requirements are met. Section 80104(c) does not include a mandatory award of just compensation.

Third, Plaintiff also argues that § 80104(e) creates a reasonable expectation of payment. Section 80104(e) requires the establishment of the Land Bank Trust, the establishment of rules and regulations for the trust, and the use of the trust's income "to provide just compensation for those dispossessed ancestral landowners." There is mandatory text regarding the use of Land Bank Trust income,

*Ching*, 725 F.3d at 1155 (emphases and some alterations in *Ching*) (footnote omitted) (quoting 8 U.S.C. § 1154(b)).

but we must consider this passage in "its context within the surrounding statutory framework." *See Ward v. Ryan*, 623 F.3d 807, 811 (9th Cir. 2010) (citing *Tellis v. Godinez*, 5 F.3d 1314, 1316–17 (9th Cir. 1993)).

Although factually dissimilar, cases addressing whether inmates have a protected property interest in their wages are instructive here. In *Ward*, we noted that incarcerated inmates do not have many traditional property rights or a common law property interest in their wages. However, under Arizona state law, an inmate has a statutorily limited protected property interest in his wages. *Id.* at 810–11. We held that, even though the statute created a property interest, the statutory framework limited that interest and Ward did not have a *current* possessory property interest. *Id.* at 813.

Here, Plaintiff has the ability to obtain additional compensation for Lot 5204 only from the government of Guam and only because of Chapter 80. Therefore, this interest is defined by state law. *See Ward*, 623 F.3d at 810 ("Property interests are not constitutionally created; rather, protected property rights are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (quoting *Roth*, 408 U.S. at 577)). The Chapter 80 statutory scheme requires payment of just compensation to dispossessed ancestral landowners as provided by rules and regulations adopted according to Guam's Administrative Adjudication Law. But, as noted, none exist. Although GALC proposed such rules and attempted enactment pursuant to the Administrative Adjudication Law, the proposed rules were rejected and no Land Bank Trust rules are currently in effect. In short, Chapter 80 provides Plaintiff with the right to file a claim for compensation, but no framework exists to pay his claim and,

because of the definitional inconsistencies within Chapter 80, no coherent basis exists to determine the amount of compensation, if any, that is owed to him.

When read in the context of § 80104 and Chapter 80 as a whole, the provision stating that the income from the Land Bank Trust "shall be used to provide just compensation for those dispossessed ancestral landowners" is not sufficiently definite to provide Plaintiff with a reasonable expectation of entitlement to compensation. Nor is any other provision in § 80104 or elsewhere in Chapter 80 sufficiently definite to create such an entitlement. Although Plaintiff has a recognized ancestral property right under § 80102, neither § 80102 nor any of the other statutes in Chapter 80 supports Plaintiff's position that he has a legitimate claim of entitlement to just compensation.

We therefore hold that the Chapter 80 provisions, whether examined individually or read together, do not give rise to a protected property interest under the Due Process Clause.

### 3.  Public Laws

Plaintiff argues that various statements in the Public Laws enacted by the Guam legislature in its attempt to address the rights of ancestral landowners create an entitlement to compensation for his ancestral lands. Again, we are not persuaded.

First, Plaintiff relies on Public Law 22-145, which refers to the ancestral landowners as the "rightful original landowners." Guam Pub. L. 22-145, § 1 (1994). This phrase is a statement of intent and purpose for the ongoing land return program; it does not grant specific rights that became

enforceable when Public Law 22-145 was enacted. *See id.* § 2 (requiring the Guam Department of Land Management to identify land "in preparation for their *eventual* return to their original landowners or the heirs, administrators, executors or other legal representatives of the landowners' original estates" (emphasis added)), *id.* § 3 ("It is the intent of this Act to insure that the lands condemned by the federal government and deemed excess to the federal government's needs, pursuant to U.S. Public Law 103-339, are rightfully returned to their original owners or their heirs."). While Public Law 22-145 does mandate the transfer of certain specific parcels "to the original rightful landowners and their heirs," *id.* § 2, no evidence in the record includes Plaintiff's ancestral land in these parcels. Thus, nothing in Public Law 22-145 supports Plaintiff's position that he has a legitimate claim or property right.

Second, Plaintiff points to the statement in Public Law 23-23 that, as to "[l]ands clearly under existing public use[,] . . . the government of Guam shall make good faith efforts to derive a means of compensation for continued public use of such lands." *See* Guam Pub. L 23-23, § 2 (1995). This statement is contained in a provision governing the Guam Land Repatriation Commission and states:

> It is the policy of the government of Guam that land returned by the federal government to Guam be returned to the estates that held such property prior to the condemnations of said lands by the Federal Government. Exceptions to this policy shall be:
>
> (a) Lands clearly under existing public use. In such circumstances, the government

> of Guam shall make good faith efforts to
> derive a means of compensation for continued
> public use of such lands.

1 Guam Code Ann. § 2004.  This is a statement of general policy and intent; it does not define specific benefits and does not support Plaintiff's position that he has a legitimate claim entitling him to compensation.

Third, Plaintiff contends that his entitlement is conferred by the statement in the GALA that "[s]everal local enactments provide a basis for former, 'original' landowners to assert a claim for land recovery or for compensation where land recovery is not possible."  Guam Pub. L. 25-45, § 2(b) (1999) (emphasis omitted) (citing Guam Pub. L. Nos. 12-226, 16-111, 17-52, 20-222, 22-145 and 23-23).  This is only a historical statement included in the background supporting the enactment of Chapter 80.  It does not grant any specific benefits or rights.

Fourth, Plaintiff refers to the statement in Public Law 26-100 that the Task Force "shall . . . find alternative means of compensation for the original owners of properties strictly needed for airport-related operations, either through leases with original landowners, outright purchases, or value-for-value land exchanges."  *See* Guam Pub. L. 26-100, § 4 (2002).  However, this version of § 4 cannot confer a legitimate claim to an entitlement because it was repealed, and the reenacted version does not contain this wording.  *See* Guam Pub. L. 30-06, § 1 (2009).

Fifth, Plaintiff contends he has a claim conferred by Public Law 30-06, which directs that the Task Force "shall identify the original owners of properties transferred to the

[GIAA] by the United States Government and shall identify property of the government of Guam to be transferred to these original landowners to compensate them on a value for value and/or size for size exchange for their property." Guam Pub. L. 30-06, § 1 (2009). As previously noted, the Task Force did propose an exchange, and Public Law 30-158 was enacted to effectuate the transfer, but the Guam Superior Court ruled that the transfer would constitute an illegal taking and enjoined it.

We therefore hold that none of the Guam Public Laws raised by Plaintiff, individually, read together, or read together with Chapter 80, give rise to a protected property interest for purposes of a due process analysis. While the Guam legislature has clearly established a process to receive, evaluate, and compensate ancestral property right claims, the legislature did not design the process to be sufficiently definite to transform Plaintiff's expectation into a property right entitled to due process protection. The district court's grant of summary judgment in favor of the Government Defendants as to Count I is affirmed.

## C.   Whether Plaintiff's Equal Protection Rights Were Violated

Count II alleges Plaintiff's Fourteenth Amendment equal protection rights have been violated because, unlike the Tiyan ancestral landowners who have received full compensation by the return of their lands, Plaintiff's land has not been returned and he has not been compensated for his ancestral land claim. The classifications at issue in Count II are (1) Tiyan ancestral landowners whose lands were returned because they were no longer being used by the government of Guam ("Land Return

Class") and (2) Tiyan ancestral landowners—including Plaintiff—whose lands are still in use ("In-Use Class") .

"[A] classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) (second alteration in original) (internal quotation marks omitted). A law that is subject to rational basis review is

> constitutionally valid if there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. And it falls within the scope of our precedents holding that there is such a plausible reason if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Id.* at 681 (citation and internal quotation marks omitted). To prevail on his equal protection claim, Plaintiff must "negative every conceivable basis which might support" the Chapter 80 statutory scheme that he challenges. *See id.* To avoid summary judgment on the claim, Plaintiff was required to "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the challenged action" lacked a rational basis. *Cf. Jones v.*

*Williams*, 791 F.3d 1023, 1037 (9th Cir. 2015) (equal protection claim based on alleged racial discrimination (brackets and internal quotation marks omitted)).  Thus, the inquiry is not whether the challenged action "*actually* further[ed] a legitimate interest; it is enough that the governing body '*could have rationally decided* that' the action would further that interest."  *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1031 (9th Cir. 2010) (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981)).

Guam's statutory scheme for resolving ancestral property right claims contemplates claims by both the Land Return Class and the In-Use Class.  However, the statutory scheme for determining compensation for the In-Use Class is more complicated than that for restoring title to the Land Return Class.  Additional issues exist for the In-Use Class, including, *inter alia*: whether there is other land that may be used to compensate the claimants; whether the claimants are to receive monetary compensation and, if so, the amount of compensation; and how the funds for monetary compensation should be administered.  Because of these additional issues, some components in the Chapter 80 statutory scheme do not apply to the Land Return Class (such as the provisions regarding the Land Bank Trust).  The government of Guam has attempted to address these issues, albeit unsuccessfully, such as by proposing the land transfer in Public Law 30-158 and by drafting proposed rules and regulations governing the Land Bank Trust.  These unsuccessful attempts to address the additional issues in compensating the In-Use Class have resulted in different treatment of the Land Return Class and of the In-Use Class.

However,

> the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 174, 179 (1980), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, see *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *[City of] Cleburne v. Cleburne Living Center, Inc.*, 473 U.S.[ 432,] 446 [(1985)].

*Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). "[T]he Equal Protection Clause 'allows the States wide latitude' with economic decisions, and 'presumes that even improvident decisions will eventually be rectified by the democratic processes.'" *Johnson*, 623 F.3d at 1031 (quoting *City of Cleburne*, 473 U.S. at 440). The Guam legislature's Chapter 80 statutory scheme focuses on the additional issues presented by the claims of the In-Use Class and relates rationally to legislative facts considered at the time to be true, such as that the proposed land transfer was feasible, or that GALC would successfully promulgate rules and regulations. Although the land transfer was unsuccessful, and GALC has failed to promulgate rules and regulations, these downstream failures do not render the statutory differences between the Land Return Class and the In-Use Class irrational.

Furthermore, the distinction between the Land Return Class and the In-Use Class served an important purpose—to resolve efficiently the ancestral land claims of the Land Return Class. The Guam legislature could have enacted a statutory scheme that resolved both classes of claims simultaneously, but the Equal Protection Clause does not require simultaneous resolution.

> The Supreme Court has stated that "[l]egislatures may implement their program step by step, in . . . economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976) (internal citation omitted). "States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with **substantially less than mathematical exactitude**." *Id.* (emphasis added). Indeed, we must remember that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.*

*Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008) (alterations in *Merrifield*).

We therefore hold that the classifications established in the Chapter 80 statutory scheme survive rational basis review,

and we affirm the district court's grant of summary judgment in favor of the Government Defendants as to Count II.

**DISMISSED** as to the GIAA; Count II **DISMISSED** as to Duenas; otherwise **AFFIRMED.**